UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

JOSEPH R. GAMBINO, DC and MAJOR
COINAGE HOLDINGS, INC.,

                          Plaintiffs,                    **MEMORANDUM & ORDER**
                                                         20-CV-3216 (MKB)

              v.

VILLAGE OF FREEPORT, NY, JOSEPH
MADIGAN, *as the Building Department
Superintendent for the Village of Freeport*, DANIEL
HINTON, *as a Senior Building Inspector for the
Village of Freeport,* MARK DAVELLA, *as the
Property Appraiser for the Village of
Freeport,* and VILMA LANCASTER, *as the official
Assessor for the Village of Freeport,*

                          Defendants.
-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiffs Joseph R. Gambino, DC and Major Coinage Holdings, Inc. commenced the

above-captioned action on July 17, 2020, alleging that Defendants Village of Freeport, NY (the

"Village"), Joseph Madigan, Daniel Hinton, Mark Davella, and Vilma Lancaster violated

Gambino's constitutional rights and his rights under state law by abusing their authority to levy

taxes and to enforce the Village's building ordinances against Plaintiffs.  (Compl. ¶¶ 2–3, Docket

Entry No. 1.)  Plaintiffs allege that the abuse resulted in the issuance of multiple summonses for

various building code infractions that restrain Gambino from performing lawful modifications to

his property located at 37 Smith Street Freeport, New York (the "Property").  (*Id.* ¶¶ 43, 54.)

Plaintiffs bring claims under 42 U.S.C. §1983 alleging several violations of their civil and

constitutional rights.  (*Id.* ¶¶ 50–76.)

Davella moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the claims are barred by a settlement agreement, and for sanctions pursuant to Rule 11(b)-(c) of the Federal Rules of Civil Procedure.  (Def. Davella's Mot. to Dismiss ("Davella Mot."), Docket Entry No. 40; Def. Davella's Mem. in Supp. of  Davella Mot. ("Def. Davella's Mem."), Docket Entry No. 40-1; (Def. Davella's Mem. in Supp. of Mot. for Sanctions ("Def. Davella's Sanctions Mem."), annexed to Def. Davella's Mot. for Sanctions as Ex. 1, Docket Entry No. 45-1.)  The Village separately moves to dismiss the claims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]   (Vill. Def.'s Mot. to Dismiss ("Vill. Mot."), Docket Entry No. 46; Vill. Def.'s Mem. in Supp. of Vill. Mot. ("Vill. Def.'s Mem."), Docket Entry No. 48.)  For the reasons set forth below, the Court denies Davella's motions to dismiss and for sanctions, grants the Village's motion, dismisses all claims against the Village, and grants Plaintiffs leave to file an amended complaint within thirty days.

**I.   Background**

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

**a.   Factual background**

Gambino is a resident of the Village and a New York State licensed chiropractor. (Compl. ¶ 7.)  He is the sole shareholder of  Major Coinage Holdings, Inc., a domestic corporation, duly incorporated under the laws of the State of New York.  (*Id.* ¶¶ 8, 27.)  The Village is a municipal corporation within the County of Nassau, New York.  (*Id.* ¶ 9.)  Davella is

---

[1]  On August 21, 2020 Defendants Daniel Hinton, Vilma Lancaster, and Joseph Madigan filed an Answer to the Complaint.  (*See* Hinton, Lancaster, and Madigan's Answer, Docket Entry No. 18.)  Hinton, Lancaster, and Madigan have not moved to dismiss the Complaint.

a resident of the Village, the property appraiser for the Village, and the owner of an interest in the entities known as Real Estate Assessment Group, LLC and Freeport Development Group, LLC.  (*Id.* ¶ 12.)

In August of 2018, Gambino publicly announced his intention to run for a position on the Board of Trustees of the Village.  (Compl. ¶ 24.)  In retaliation for accusations of political corruption leveled by Gambino at Davella and Lancaster, Davella allegedly used his "public municipal powers of taxation to levy a sixty percent increase of [P]laintiff's property located at 6 St. Mary's Place" and the Property.  (*Id.* ¶¶ 25–26, 30, 31.)  Davella also allegedly "began an aggressive social media campaign against Gambino's candidacy."  (*Id.* ¶ 26.)  Specifically, in or around March of 2019, Davella "constantly appeared at [P]laintiff's properties and constantly harassed workers who were performing legal and permitted work . . . [and] used unmanned aerial vehicles to take surreptitious overhead pictures of [P]laintiff's property and then posted them on social media." (*Id.* ¶ 35.)

Gambino ultimately lost the election for Village Trustee, (*id.*), and in May of 2020 announced his candidacy as a write-in for the school board of the Freeport School District, (*id.* ¶-36).  During this time, Gambino was involved in a dispute with his former employee and tenant Biterbo Ortiz.  (*Id.* ¶ 37.)  Ortiz formerly occupied an upstairs apartment at the Property. (*Id.*)  After Ortiz vacated the apartment in May of 2020, he told the Freeport Police Department that Gambino had denied him access to certain appliances at his former residence and had also completed illegal renovations — including constructing a false wall in the apartment.  (*Id.* ¶ 38.)

Based on the information obtained from Ortiz, Madigan submitted an affidavit to the Village court, requesting a warrant to perform a search of the Property, pursuant to the Village Code section 128-32.  (Compl. ¶ 39.)  The Village Justice Court issued an order directing the

building department to conduct a search of the Property for illegal apartments in violation of the Village Code.  (*Id*. ¶ 40.)  After the search, Gambino was issued a series of summonses for various alleged building code infractions.  (*Id*. ¶ 43.)

Plaintiffs contend that during this time, Davella informed Ortiz that he knew about the report filed by Ortiz against Gambino and offered Ortiz $20,000 for "any information that would assist in the prosecution of Dr. Gambino."  (*Id*. at ¶¶ 44–45, 48.)  Davella then allegedly referred Mr. Ortiz "to a lawyer to consult for litigation against Dr. Gambino."  (*Id.* at ¶ 48.)

**b.  Procedural background**

**i.   New York State court proceedings**

On December 18, 2018, Gambino and his two New York State professional corporations, Joseph Gambino, D.C. P.C. and JJ&R Chiropractic, P.C., filed a lawsuit in the New York Supreme Court, Nassau County seeking damages for defamatory statements allegedly made by Davella and three other non-defendant individuals, related to his candidacy for a trustee position in the Village.  (N.Y. Sup. Ct. Verified Compl., annexed to Pls.' Opp'n to Davella Mot. as Ex. 2, Docket Entry No. 54-2.)[2]  On April 23, 2019, Plaintiffs filed an amended complaint, requesting the same claims for relief against the same defendants.  (N.Y. Sup. Ct. Verified Am. Compl., annexed to Pls.' Opp'n to Davella Mot. as Ex. 3, Docket Entry No. 54-3.)  After exchanging discovery, Gambino, in his sole capacity, filed a second amended complaint alleging damages for two defamatory statements made by Davella.  (N.Y. Sup. Ct. Verified Second Am. Compl., annexed to Pls.' Opp'n to Davella Mot. as Ex. 4, Docket Entry No. 54-4.)

---

[2]  Plaintiffs' opposition to the motion to dismiss was also filed at ECF 41.  The Court refers to the version filed at ECF 54, which is identical except that it also includes a declaration from Gambino as an exhibit attachment.

On June 23, 2020, Gambino and Davella entered into a Settlement Agreement and Release (the "Agreement") related to the defamation proceedings in state court. Both parties executed a stipulation of discontinuance of the state court matter, dismissing all of Gambino's claims against Davella with prejudice.[3] Stipulation of Discontinuance, *Gambino v. Davella*, 2018 NY Slip Op 616847 (Sup. Ct., Nassau County 2018).

### ii.   Federal court proceeding

Plaintiffs filed the Complaint in this Court alleging that Plaintiffs "are the victims of harassment, abuse of power and abuse of process by corrupt officials within the municipal government of the Village of Freeport, as a result of [P]laintiff Gambino's efforts to expose their corruption." (Compl. ¶ 2.) Plaintiffs bring this action seeking redress pursuant to 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution for violations of their constitutional rights. (*Id.* ¶ 4, 52.) Plaintiffs seek monetary damages and injunctive relief against the Village, Davella, in his official capacity as an appraiser for the Village, and other Village employees, as well as "all remedies available to them for [Defendants'] Abuse of Process and Malicious Prosecution, in violation of New York State Law." (*Id.* ¶ 3-4.)

On March 29, 2021, Davella filed a motion to dismiss the claims pursuant to Rule 12(b)(6) on the grounds that the claims are barred by the Agreement and for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, (Def. Davella's Mot.; Def. Davella's Mot. for Sanctions), and the Village filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). (Vill. Mot.)

---

[3] The terms of the Agreement were not filed with the stipulation of discontinuance.

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff's favor." *Sacerdote v. New York Univ.,* 9 F.4th 95, 106, 107 (2d Cir. 2021)*; Vaughn v. Phoenix House N.Y. Inc.,* 957 F.3d 141, 145 (2d Cir. 2020) (same)*.* A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570 ). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cavello Bay Reinsurance Ltd. v. Shubin Stein,* 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal,* 556 U.S. at 678). Although all allegations contained in the Complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### b.  Davella's motion to dismiss and for sanctions, and Plaintiffs' cross-motion for sanctions

Davella argues that Plaintiffs' claims against him should be dismissed because any current and potential claims are barred by the Agreement executed by the parties on June 23, 2020.  (Def. Davella's Mem. at 1–2.)  In support, Davella asks the Court to take judicial notice of the Agreement and attaches a copy to his motion.  (*Id.* at 5–6.)  Davella also moves for sanctions against Plaintiffs and Plaintiffs' counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure, arguing that Plaintiffs' claims against him are barred by the Agreement and therefore "have no merit as a matter of law," and Plaintiffs' counsel failed to investigate the action or

withdraw it when faced with clear evidence of its frivolity.  (Def. Davella's Sanctions Mem. at 4–10.)

Plaintiffs do not deny that the Agreement exists, but instead argue that it does not cover the claims at issue.[4]  (Pls.' Opp'n to Davella Mot. at 5–6.)  They argue that Davella "fraudulently induced Gambino to release him from liability, for actions Davella was actively engaged in during the period within which the [Agreement] was executed, and because Davella purposefully delayed executing the [Agreement] while he was engaged in the acts complained of."  (*Id.* at 2.)  In opposing the motion for sanctions, Plaintiffs contend that the Agreement does not cover the claims at issue and therefore does not bar the allegations at issue, and because the claims are not barred, Gambino presents a non-frivolous and factually cognizable claim.  (Pls.' Opp'n to Davella Mot. for Sanctions at 3–6, Docket Entry No. 53.)  Plaintiffs also request that sanctions be imposed on Davella for Plaintiffs' attorneys' fees incurred in responding to the motion for sanctions.  (*Id.* at 6–10.)

### i.   The Court denies Davella's motion to dismiss

Because the Court cannot consider the Agreement in deciding the motion to dismiss, the Court denies Davella's motion to dismiss the Complaint.

In deciding a motion pursuant to Rule 12(b)(6), "the district court is normally required to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020)

---

[4]  The Court notes that the parties do not dispute the terms of the Agreement but instead dispute whether Plaintiffs' claims arise from the same facts as those in the state court action and are therefore covered by the Agreement.  (*See* Def. Davella's Mem. at 4–6; Pls.' Opp'n to Davella Mot. at 5–8.)  Plaintiffs also contend that the Agreement should not be given effect because it is overbroad.  (*See* Pls.' Opp'n to Davella Mot. at 5–8.)

(quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *Chambers*, 282 F.3d at 152–53

("the complaint is deemed to include any written instrument attached to it as an exhibit or any

statements or documents incorporated in it by reference," and documents considered "integral"

to the complaint (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d

Cir.1995) (per curiam))); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

Federal courts are also empowered to take judicial notice of state court records and decisions.

*See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 166 n.3 (2d Cir. 2012) ("We may 'take

judicial notice of a document filed in another court . . . to establish the fact of such litigation and

related filings.'" (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157

(2d Cir. 2006))); *see also Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021) ("Under

Federal Rule of Evidence 201, a 'court may judicially notice a fact that is not subject to

reasonable dispute.' . . . 'Such facts must either be (1) generally known within the territorial

jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

sources whose accuracy cannot reasonably be questioned.'" (first quoting Fed. R. Evid. 201(b);

and then quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d

66, 70 (2d Cir. 1998))); *Toliver v. City of New York*, No. 10-CV-3165, 2011 WL 4964919, at *3

(S.D.N.Y. Sept. 15, 2011).  A court may take judicial notice of a document for its existence but

"not for the truth of the matters asserted." *Roth*, 489 F.3d at 509 (quoting *Kramer v. Time

Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

Plaintiffs have not referenced the Agreement in the Complaint or attached it to the

Complaint, nor is the Agreement integral to Plaintiffs' claims.  *See Glob. Network Commc'ns,

Inc.*, 458 F.3d at 155 ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the

formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest

regarding its substantive merits.  The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it."); *Jackson v. Nassau County*, No. 18-CV-3007, --- F. Supp. 3d ---, ---- 2021 WL 3207168, at *6 (E.D.N.Y. July 28, 2021) ("[A] motion for summary judgment, rather than a motion to dismiss, 'is the proper procedural device to consider matters outside the pleadings, such as facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence.'" (citing *Glob. Network Commc'ns, Inc.*, 458 F.3d at 155)); *see also Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2021 WL 4434935, at *21 (S.D.N.Y. Sept. 23, 2021) (declining to consider several documents attached to the defendants' motion to dismiss where these documents were neither attached to the second amended complaint nor incorporated by reference).

Moreover, the Court declines to take judicial notice of the Agreement because it was not filed in the state court, and is therefore not a public record.  *Compare Cherniak v. Trans-High Corp.*, No. 18-CV-7734, 2020 WL 1047884, at *2 (S.D.N.Y. Mar. 4, 2020) (stating that "[t]he [c]ourt may not take judicial notice of the [a]greement, because it was not filed on the docket when the [previous action] was terminated, and is not otherwise available as a public record") (collecting cases); *and Cantey v. Mount Vernon City Sch. Dist.*, No. 16-CV-2669, 2018 WL 3315574, at *4 (S.D.N.Y. July 5, 2018) (declining to take judicial notice of a settlement agreement on a motion to dismiss and converting the motion to summary judgment because the settlement agreement was "handled privately between the parties and not made accessible to the public"); *and Ranta v. City of New York*, No. 14-CV-3794, 2015 WL 5821658, at *9 (E.D.N.Y. Sept. 30, 2015) (declining to take judicial notice of a general release of claims when there was "no indication" that the documents were "filed with a court and [were] a matter of public record"); *and Shahzad v. County of Nassau*, No. 13-CV-2268, 2013 WL 6061650, at *4

(E.D.N.Y. Nov. 14, 2013) (declining to take judicial notice because the settlement agreement and release "do not appear in the court's docket" and therefore "neither the [s]ettlement [a]greement nor the [r]elease is a court document and they are not susceptible to judicial notice"), *with Maspeth Fed. Sav. & Loan Ass'n v. Fid. Info. Servs., LLC*, 275 F. Supp. 3d 411, 413 n.1 (E.D.N.Y. 2017) (taking judicial notice of "relevant filings in the related class action lawsuit, . . . including the amended class action complaint and stipulation of settlement"); *and Deylii v. Novartis Pharms. Corp.*, No. 13-CV-6669, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (taking judicial notice of class action settlement documents and stating that "[t]he [c]ourt may take judicial notice of 'public documents on a motion to dismiss to determine whether claims are barred by prior litigation'" (quoting *Cowan v. Codelia*, No. 98-CV-5548, 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2001))); *and Wolson v. Reed Elsevier Inc.*, No. 09-CV-4040, 2010 WL 334919, at *1 (S.D.N.Y. Jan. 29, 2010) (taking judicial notice of settlement agreement filed in multi-district class action case in ruling on motion to dismiss).

Accordingly, because the Court does not consider the Agreement, which was the sole basis for Davella's motion to dismiss the Complaint, the Court denies Davella's motion to dismiss the Complaint.

### ii.   The Court denies the motions for sanctions

Rule 11 of the Federal Rules of Civil Procedure provides that a court may impose sanctions either by motion or by its own initiative, when (1) a pleading, written motion or other paper is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) the claims, defenses and other legal contentions raised are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" (3) the factual contentions do

not have any evidentiary support or are unlikely to have any evidentiary support after a

reasonable opportunity for further investigation or discovery; and (4) the denials of factual

contentions are not warranted on the evidence or are not "reasonably based on belief or a lack of

information." Fed. R. Civ. P. 11(b)–(c); *see also Ipcon Collections LLC v. Costco Wholesale

Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("Sanctions may be — but need not be — imposed when

court filings are used for an 'improper purpose,' or when claims are not supported by existing

law, lack evidentiary support, or are otherwise frivolous."). Rule 11 also "imposes an

'affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a

pleading' before actually signing it." *Hoatson v. N. Y. Archdiocese*, No. 05-CV-10467, 2007

WL 431098, at *9 (S.D.N.Y. Feb. 8, 2007) (quoting *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d

704, 706 (2d Cir. 1990)). "[E]ven when a district court finds a violation of Rule 11, '[t]he

decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district

court's discretion.'" *Ipcon Collections*, 698 F.3d at 63 (alteration in original) (quoting *Perez v.

Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)). Enforcing Rule 11 requires "notice and a

reasonable opportunity to respond," and "[a] motion for sanctions must be made separately from

any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."

Fed. R. Civ. P. 11(c).

As explained above, the Court declines to consider the Agreement proffered by Davella

at this stage of the litigation. Thus, Plaintiffs are not barred from pursuing this action and there

is no basis for the Court to impose sanctions pursuant to Rule 11. The Court therefore denies

Davella's motion for sanctions.

The Court also denies Plaintiffs' motion for sanctions as baseless. Although Davella's

motion for sanctions essentially repeats arguments made in the motion to dismiss, based on his

argument that Plaintiffs' claims are barred by the Agreement, Davella has a basis to move for sanctions. *See Bank v. Caribbean Cruise Line, Inc*., No. 11-CV-2744, 2013 WL 2285142, at *4 (E.D.N.Y. May 23, 2013) (denying cross-sanctions where movants' arguments were essentially a recitation of an earlier motion).

### c. The Court grants the Village's motion to dismiss

The Village of Freeport moves to dismiss the Complaint against it for failure to state a claim. In support, the Village of Freeport contends that (1) Plaintiffs fail to state a claim for malicious prosecution, substantive due process, unlawful search, and selective enforcement, (Vill. Def.'s Mem. at 3–11; Vill. Def.'s Reply at 2, 8–9 Docket Entry No. 51); (2) Plaintiffs cannot pursue section 1983 claims against the Village based on a theory of *respondeat superior*, (Vill. Def.'s Mem. at 14–15); and (3) the Village is entitled to qualified immunity from Plaintiffs' damages claims, (*id.* at 15–17).

Plaintiffs argue that (1) the malicious prosecution and selective enforcement claims should proceed because they have alleged a clear pattern of targeted harassment and discrimination based on their "political beliefs and exercise of their Constitutional Rights," (Pls.' Opp'n to Vill. Mot. at 5, Docket Entry No. 52),[5] and Plaintiffs' treatment "was different than other members of the community," (*id.* at 11; Compl. ¶¶ 27–29); (2) they have adequately pled a Fourth Amendment claim because the Village entered the Property without permission, (Pls.' Opp'n to Vill. Mot. at 7–9; Compl. ¶¶ 39–43); (3) they are not alleging liability on a theory of *respondeat superior* because "the officials in question who selectively targeted [P]laintiffs for

---

[5] Plaintiffs' opposition to the motion to dismiss was also filed at ECF 49. The Court refers to the version filed at ECF 52, which is identical except that it also includes a duplicate title sheet on the last page of the document.

harassment are not 'below the policymaking level,' but are rather *the* policymakers with respect to their individual duties and jobs within the Village," (Pls.' Opp'n to Vill. Mot. at 13–15 (second alteration in original)); and (4) the Village is not entitled to qualified immunity because the protection does not extend to municipal governments, (*id.* at 15).  The Court addresses each claim in turn.

### i.   Malicious prosecution claims

Defendants do not dispute that Gambino was issued several summonses for building code violations, but contend that Plaintiffs' malicious prosecution claims are defective because the proceedings were not terminated in Gambino's favor and Plaintiffs fail to allege the absence of probable cause or actual malice.  (Vill. Def.'s Mem. at 5–8.)

Plaintiffs allege that Defendants "maliciously prosecute[d] [P]laintiffs by unlawfully issuing fines and summonses" and "filing and/or submitting patently false affidavits to the Village Court."[6]  (Compl. ¶¶ 64–65.)  Plaintiffs further allege that they "could potentially be subject to duplicative penalties for the same alleged action" and that Gambino "is to be prosecuted at Village Court."  (Pls'. Opp. to Vill. Def.'s Mot. 6, 7.)

The Second Circuit has clarified that "federal law defines the elements of a [section] 1983 malicious prosecution claim, and that a [s]tate's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements."  *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018).  "To prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination

---

[6]  Plaintiffs bring a cause of action under federal and state laws for malicious prosecution.

of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal

proceeding and (4) actual malice.'" *Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir.

2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)); *Morris v. Silvestre*, 604 F.

App'x 22, 24 (2d Cir. 2015) (same).  However, under section 1983, a plaintiff is required to

show an "affirmative indication[] of innocence to establish 'favorable termination,'" *Lanning*,

908 F.3d at 25, and under state law, the favorable termination element is satisfied "so long as

'the final termination of the criminal proceeding is not inconsistent with the [p]laintiff's

innocence," *id.* (citing *Penree v. City of Utica*, No. 13-CV-1323, 2016 WL 915252, at *17

(N.D.N.Y. Mar. 4, 2016)).

     Plaintiffs have not alleged that a disposition has been entered with respect to any of the

summonses brought against Gambino and therefore cannot established any termination in their

favor.  *See McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) (recognizing that a claim for

malicious prosecution accrues only once the underlying criminal proceedings have resolved in

the plaintiff's favor).  Thus, even viewing the factual allegations in the light most favorable to

Plaintiffs, Plaintiffs fail to allege that any proceeding terminated in Plaintiffs' favor.[7]  *See Breen*

---

[7]  In opposition to the Village's motion to dismiss, Plaintiffs allege that the multiple summonses issued against Gambino demonstrate "that the Village has no intention of affording him a fair hearing," warranting a stay of the proceedings.  (Pls.' Opp'n to Vill. Mot. at 6–7.) Plaintiffs misconstrue the Court's "power to enjoin state officers from instituting criminal actions."  *Younger v. Harris*, 401 U.S. 37, 45 (1971) (recognizing that "when absolutely necessary for protection of constitutional rights, courts . . . have power to enjoin state officers from instituting criminal actions.")  Although the Court is empowered to grant injunctive relief, *Younger* "creates a separate and independent barrier to federal court injunctions of pending state court proceedings."  *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 319 (E.D.N.Y. 2012) (quoting Erwin Chemerinsky, Federal Jurisdiction § 11.2.1 (4th ed. 2003)); *see Younger*, 401 U.S. at 43–44 (holding that federal courts "should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.").  The principles from *Younger* do not apply because Plaintiffs are not seeking an injunction to stay a criminal proceeding.  *Helms Realty Corp. v. City of New York*, 320 F. Supp. 3d 526, 537 (S.D.N.Y. 2018) (holding that the *Younger* is inapplicable because the

14

*v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) ("The charge subsequently was dismissed for facial insufficiency pursuant to section 170.30 of New York's Criminal Procedure Law.  Because this was not a decision on the merits, an essential element of a cause of action for malicious prosecution, the district court did not err in dismissing Breen's claim of malicious prosecution."); *Shepler v. Collura*, No. 17-CV-10254, 2020 WL 729763, at *5 (S.D.N.Y. Feb. 13, 2020) (dismissing malicious prosecution claim where complainant "has not attempted to argue . . . that the prosecution below terminated in his favor."); *Levy v. Alfano*, 47 F. Supp. 2d 488, 496 (S.D.N.Y. 1999), *aff'd*, 208 F.3d 203 (2d Cir. 2000) (rejecting malicious prosecution claim where a summons was issued for a violation but there was no evidence of any proceeding beyond the summons and explaining that even if a summons commences a prosecution for purposes of a malicious prosecution action it does not establish that a proceeding terminated (citing *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228, 1250 (2d. Cir.1979))); *Bowles v. State*, 37 F. Supp. 2d 608, 611 (S.D.N.Y. 1999); *see also Scomello v. Caronia*, 648 N.Y.S.2d 688, 689 (1996) (holding that state law malicious prosecution claim was properly dismissed "[b]ecause the underlying action [had] not been resolved in favor of either party"); *Hornstein v.*

---

action "is neither a criminal prosecution nor a state civil proceeding akin to a criminal prosecution").  Nevertheless, Plaintiffs fail to make a showing of an irreparable injury that Gambino would sustain if the Court did not stay the Village Court proceedings.  *Trisvan v. Annucci*, No. 14-CV-6016, 2018 WL 5791915, at *2 (E.D.N.Y. Nov. 5, 2018) ("A party seeking a preliminary injunction must ordinarily establish (1) 'irreparable harm'; (2) 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party'; [ (3) that the balance of hardships tips in its favor]; and ( [4] ) 'that a preliminary injunction is in the public interest.'").

*Wolf,* 432 N.Y.S.2d 404, 405 (1980) (affirming order that dismissed state law malicious prosecution claim as premature because proceeding was still pending).[8]

Accordingly, the Court dismisses Plaintiffs' malicious prosecution claims against the Village.

### ii.   Substantive due process claims

The Village argues that Plaintiffs' substantive due process claims are improperly pled and that Plaintiffs fail to make a showing of deprivation of liberty to support a due process claim. (Vill. Def.'s Mem. at 4; Vill. Def.'s Reply at 4.)

Plaintiffs argue that Defendants violated their rights by "filing and/or submitting patently false affidavits to the Village Court, in support of an application for a search warrant . . . [that] subsequently led to an unlawful raid by law enforcement and Village personnel on [P]laintiff's [P]roperty, and caused damage to said [P]roperty, without due process and without cause." (Compl. ¶ 56.) [9]

To state a claim for substantive due process, a plaintiff must allege that: (1) he had a valid property interest and (2) the "defendants infringed on that property right in an arbitrary or irrational manner." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014) (noting that in order to state a claim for substantive due

---

[8] Because Plaintiffs fail to establish that the ongoing prosecution was terminated in Gambino's favor, the Court declines to determine whether Defendants had probable cause for the prosecutions based on the summonses.

[9] A plain reading of the Complaint suggests that Plaintiffs are alleging violations of their substantive due process rights, *see* Complaint ¶ 4 ("[P]laintiffs bring this action seeking redress pursuant to 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution, for violations of their rights to substantive due process and equal protection under the law."), and Defendants understand Plaintiffs to be bringing only a substantive due process claim.
.

process, a plaintiff must allege that they had a valid property interest and "defendants infringed

on that property right in an arbitrary or irrational manner." (quoting *Cine SK8, Inc. v. Town of*

*Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007))); *see also Leder v. Am. Traffic Sols., Inc.*, 630 F.

App'x 61, 62 (2d Cir. 2015) (same).

### 1.   **Plaintiffs fail to allege a property interest**

Plaintiffs fail to allege a property interest.  They cannot allege a deprivation of property

based on the court-issued search of the Property for alleged building code violations.  *See*

*Macera v. Vill. Bd. of Ilion*, No. 16-CV-0668, 2017 WL 1194236, at *5 (N.D.N.Y. Mar. 30,

2017) ("[A]n individual does not have an interest in a Town's enforcement of discretionary . . .

codes." (alteration in original)).

### 2.   **Plaintiffs fail to allege a substantive due process violation**

Moreover, Plaintiffs fail to state a claim for substantive due process because they do not

allege that Defendants acted in an arbitrary or irrational manner in conducting their search of the

Property and issuing summonses for building code violations.

Substantive due process "does not forbid governmental actions that might fairly be

deemed arbitrary or capricious and for that reason correctable in a state court lawsuit . . .

[substantive due process] standards are violated only by conduct that is so outrageously arbitrary

as to constitute a gross abuse of governmental authority."  *Harlen Assocs. v. Inc. Vill. Of*

*Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258,

263 (2d Cir. 1999)); *Natale*, 170 F.3d at 262 ("For state action to be taken in violation of the

requirements of substantive due process, the denial must have occurred under circumstances

warranting the labels 'arbitrary' and 'outrageous.'") (collecting cases); *Phillips v. County of*

*Orange*, 894 F. Supp. 2d 345, 381 (S.D.N.Y. 2012) ("At most, [the plaintiffs] have claimed that

[d]efendants were negligent in their handling of the abuse investigation, but they have not

alleged sufficient facts to support an inference that [the defendants'] acts were malicious, such

that their actions could 'shock the conscience.'" (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*,

654 F.3d 267, 275 (2d Cir. 2011))).

Defendants did not act in an arbitrary or irrational manner in conducting the search of the

Property for building code violations.  *Longinott v. Bouffard*, No. 11-CV-4245, 2012 WL

1392579, at *5 (S.D.N.Y. Apr. 17, 2012) ("[T]he Supreme Court has repeatedly emphasized that

only the most egregious official conduct can be said to violate substantive due process." (citing

*County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998))); *see also Manza v. Newhard*, 470 F.

App'x 6, 8–9 (2d Cir. 2012) (finding that the issuance of, and reliance upon, a legal opinion

which led to termination of property owner's water service after a sixty-day period to pursue

legal remedies could not be said to shock the conscience).  Defendants conducted the search after

receiving a statement about building code violations from a former tenant and receiving a

warrant from a judicial officer.  (Compl. ¶¶ 40–41.)

Accordingly, the Court dismisses Plaintiffs' substantive due process claims against the

Village.

### iii.   Unlawful entry

The Village argues that the Complaint fails to state a claim for an illegal entry under the

Fourth Amendment because the search that was conducted on the Property was the result of a

valid, court-ordered search warrant.  (Vill. Def.'s Reply at 8.)  In support, the Village asserts that

Plaintiffs are unable to defeat the presumption of validity of the warrant because it "was issued

by a court of competent jurisdiction . . . based on probable cause pursuant to Joseph Madigan,

18

the Superintendent of Buildings for the Incorporated Village of Freeport's affidavit, and based on the third[] party complaint of Plaintiffs' tenant." (*Id.* at 8–9.)

Plaintiffs contend that the Village executed an "unlawful raid," of the Property. (Compl. ¶ 56, 65.) In support, Plaintiffs argue that (1) Madigan never "requested permission from [P]laintiff, or any of his employees, or any alleged 'tenant,' to enter the premises" as required by law, (*id.* ¶¶ 39–42, 56, 65; Pls.' Opp'n to Vill. Mot. at 7–8), and (2) the warrant that authorized the search was invalid because it was based on "the false and misleading affidavit, filed by [D]efendant Madigan," (Pls.' Opp'n to Vill. Mot. at 7; *see also* Compl.¶¶ 56, 65.)

"[A] search pursuant to a warrant issued by a judicial officer upon a finding of probable cause is presumptively reasonable." *Siddiqui v. Rocheleau*, 818 F. App'x 20, 22 (2d Cir. 2020) (quoting *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017)); *Southerland v. City of New York*, 680 F.3d 127, 146 (2d Cir. 2012) ("'[T]he issuance of a search warrant . . . creates a presumption that it was objectively reasonable for the [defendant] to believe that the search was supported by probable cause' so as to render the defendant qualifiedly immune from liability." (second and third alterations in original) (quoting *Martinez v. City of Schenectady*, 115 F.3d 111, 115 (2d Cir. 1997))). A plaintiff can defeat a search warrant's presumption of reasonableness by showing that: (1) the affiant knowingly and intentionally, or with a reckless disregard of the truth, made false statements or omissions in his application for a warrant, and (2) such statements or omissions were necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *Siddiqui*, 818 F. App'x at 22 ("While a search pursuant to a warrant issued by a judicial officer upon a finding of probable cause is presumptively reasonable, that presumption can be defeated by showing that a defendant (1) knowingly and deliberately, or with a reckless disregard of the truth, procured the warrant, (2) based on false statements or material omissions,

that (3) were necessary to the finding of probable cause." (citing *Ganek*, 874 F.3d at 81 (internal

quotation marks and citation omitted))); *see, e.g.*, *Calderon v. City of New York*, 138 F. Supp. 3d

593, 604 (S.D.N.Y. 2015) (applying *Franks* standard where the plaintiffs challenged validity of

search warrant because the application was allegedly based on false statements that a judicial

officer relied on to issue the warrant).  In such cases, a plaintiff must make a "substantial

preliminary showing" that the affiant knowingly and intentionally, or with reckless disregard for

the truth, made a materially false statement in applying for the warrant.  *Rivera v. United States*,

928 F.2d 592, 604 (2d Cir. 1991) (quoting *Franks*, 438 U.S. at 155–56).  "Unsupported

conclusory allegations of falsehood or material omission" cannot support a challenge to the

validity of the warrant; rather, the plaintiff must make "specific allegations" supported by an

offer of proof.  *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994).

  To demonstrate that the affiant made false statements or omissions knowingly and

intentionally, or with a reckless disregard of the truth, the plaintiff must allege facts showing that

the false statements or omissions were "designed to mislead, or that [they were] made in reckless

disregard of whether they would mislead."  *Calderon*, 138 F. Supp. 3d at 605 (quoting *United*

*States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (alteration in original)).  "[I]t is

insufficient for a plaintiff to allege that there were *errors* in the affidavit, as 'misstatements or

omissions caused by "negligence or innocent mistake[s]"' do not establish falsity or reckless

disregard."  *Id.* (second alteration in original) (quoting *Rajaratnam*, 719 F.3d at 153) (emphasis

in original).

  With respect to the materiality requirement, to determine if misrepresentations or

omissions are material, a court corrects the errors and then resolves *de novo* whether the

hypothetical corrected affidavit still establishes probable cause.  *See Rajaratnam*, 719 F.3d at

146–47 (explaining that courts correct errors in an affidavit to determine if probable cause exists based on a hypothetical corrected affidavit, and further noting that, in the context of omissions, courts "insert the omitted truths" into the hypothetical corrected affidavit); *Southerland*, 680 F.3d at 144–45 (explaining that courts correct errors in an affidavit to determine if probable cause still exists); *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) ("If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate."); *Price v. Seward*, No. 17-CV-2168, 2020 WL 207710, at *3 (E.D.N.Y. Jan. 14, 2020) ("Courts assess necessity or materiality using the 'corrected affidavits approach,' in which they look to the hypothetical contents of a 'corrected' application to determine whether it would have supported a finding of probable cause." (quoting *Calderon*, 138 F. Supp. 3d at 606)).

Plaintiffs allege that Madigan's affidavit was false and misleading because it "implies that the Superintendent of Buildings, or someone in his employ, had made a request to enter the [Property] to conduct an inspection, and that such request had been refused." (Pls.' Opp'n to Vill. Mot. at 8.) However, even assuming this statement is not accurate, Plaintiffs have not alleged facts showing that they were made in reckless disregard of whether they would mislead. The facts indicate that Madigan's affidavit — and the resulting search warrant — was based on complaints from Ortiz, describing alleged building code violations at the Property. (Madigan's Aff. ¶¶ 3–5, annexed to Pls.' Opp'n to Vill. Mot. as Ex. 2, Docket Entry No. 52-2.) A citizen complaint is a reasonable basis to procure a search warrant. *See Camara,* 387 U.S. at 539–40 ("[A]s a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only

after entry is refused unless there has been a citizen complaint or there is other satisfactory

reason for securing immediate entry.").

Plaintiffs also have not alleged any facts to indicate that Madigan's statement in the

affidavit — implying that he made a request to enter the Property to conduct an inspection and

that the request was denied — was material to the judge's decision to issue a search warrant.  *See*

*Canfield*, 212 F.3d at 718 (holding that plaintiffs must show that "the alleged falsehoods or

omissions were necessary to the [issuing] judge's probable cause finding" (alteration in original)

(quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir.1998))); *see also United States v.*

*Moore*, 968 F.2d 216, 222 (2d Cir. 1992) ("False information voids a warrant only if the

information was necessary to the finding of probable cause."); *Foti v. County of Marin*, No.

09-CV-4167, 2010 WL 957645, at *7 (N.D. Cal. Mar. 12, 2010) (holding that without more

specific information, a defendant's allegation that "there was no affidavit of probable cause" is

insufficient to challenge the validity of the search warrant).

Accordingly, the Court dismisses Plaintiffs' unlawful entry claims against the Village.

### iv.  Equal protection claims

The Village argues that Plaintiffs fail to plead facts to plausibly demonstrate that

"[Gambino] was treated differently than other[s] with respect to the issuances of . . . summonses"

or that "he was prosecuted selectively from other[s] with respect to the[] Village Code

violations."  (Vill. Def.'s Mem. at 12–13.)  In support, the Village asserts that these allegations

are "premature" because the proceedings for the Village Code violations have not yet concluded

and "Plaintiffs fail to even allege that the alleged selective treatment against him was motivated

by race or religion or an intent to punish or inhibit his exercise of constitutional rights."  (*Id.* at

13.)  The Village also argues that because the issuance of the summonses resulted from a witness

statement to the Freeport Police Department, they cannot have a malicious intent.  (*Id.* at 13–14 (quoting *Terio v. Michaud*, No. 10-CV-4276, 2010 WL 6032586, at *4 (S.D.N.Y. Dec. 3, 2010) (dismissing the plaintiff's false arrest and malicious prosecution claims, noting that false arrest claim cannot survive motion to dismiss if "plaintiff's version of events establishes probable cause to arrest," and concluding that the witness statements provided defendants with probable cause to arrest the plaintiff), *report and recommendation adopted*, No. 10-CV-4276, 2011 WL 868661 (S.D.N.Y. Mar. 10, 2011)).)

Plaintiffs contend that, based on "malicious bad faith intent to injure," Defendants have treated them differently than their similarly situated neighbors because of "Gambino's public advocacy against corruption within Village Hall, and his public campaign for Village office on a platform against that corruption."  (Pls.' Opp'n to Vill. Mot. at 11–13; Compl. ¶¶ 24–26, 35.)  In support, Plaintiffs assert that (1) "they were improperly denied a zoning variance . . . and received multiple violations on" the [P]roperty when "multiple members of the community . . . have performed similar work without having receiv[ed] permits or violations," (Pls.' Opp'n to Vill. Mot. at 11; Compl. ¶¶ 27–29); and (2) "their Village tax assessments were improperly increased to levels markedly different than their County assessment," (Pls.' Opp'n to Vill. Mot. at 11; Compl. ¶¶ 31–34).

To state a claim for equal protection, a plaintiff can proceed on both a selective enforcement and a class-of-one theory.  *See Jordan v. N.Y.C. Bd. of Elections*, 816 F. App'x 599, 603–04 (2d Cir. 2020).  Where a plaintiff is treated unequally compared with others similarly situated, and when such treatment is based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person," the facts give rise to a claim of selective enforcement.  *Freedom*

23

*Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)); *LaTrieste Rest. & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)); *see also Bush v. City of Utica*, 558 F. App'x 131, 134 (2d Cir. 2014) (holding that plaintiffs stated an equal protection claim when they alleged that the fire department had a policy of not entering low-income properties).  Similarly, equal protection claims based on a so-called "class of one" theory involve claims "where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (first citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); and then citing *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cnty*., 488 U.S. 336 (1989)).  A plaintiff asserting a selective enforcement or class-of-one claim must present evidence of similarly situated comparators.  *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004) ("A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated." (citing *Giordano v. City of New York*, 274 F.3d 740, 750–51 (2d Cir. 2001))); *see also King v. N.Y. State Div. of Parole*, 260 F. App'x 375, 380 (2d Cir. 2008) (affirming dismissal of class of one claim because the plaintiff "failed to identify a single individual with whom he can be compared for [e]qual [p]rotection purposes"); *Hunter v. City of New York*, 35 F. Supp. 3d 310, 328 (E.D.N.Y. 2014) (holding that the plaintiff's allegations were insufficient to state a selective enforcement or class-of-one claim based on his arrest because he had not pled facts showing the defendants treated him differently based on impermissible considerations or that the proposed comparator, who was not arrested, was similarly situated); *Gray v. Town of Easton*, 115 F. Supp. 3d 312,

24

319–20 (D. Conn. 2015) ("[B]ecause the two theories themselves are so similar, there is little reason to suppose why a selective-enforcement claim should not require the same high degree of similarity between comparators as the Second Circuit requires for a class-of-one claim."), *aff'd sub nom*, *Gray v. Maquat*, 669 F. App'x 4 (2d Cir. 2016).

Plaintiffs have not sufficiently alleged that they were treated differently compared to others similarly situated and that there is no rational basis for any difference in treatment. Plaintiffs make broad assertions that "multiple members of the community . . . have performed similar work without having receiv[ed] permits or violations," (Compl. ¶¶ 27–29), but fail to offer any information about the comparative properties, including how the renovations were similar to the alleged building code violations underlying the summonses contested by Plaintiffs. *See Lilakos v. New York City*, 808 F. App'x 4, 8–9 (2d Cir. 2020) ("Although [the plaintiffs] include dozens of allegations about the existence of other illegal hostels, [they] fail to explain how those residences are like theirs . . . [T]hey share only one thing in common — the same alleged violation of law.  That is insufficient to state an equal protection claim."); *Pappas v. Town of Enfield*, 602 F. App'x 35, 36 (2d Cir. 2015) (concluding that although other businesses that complied with technical requirements won approval, "[a]bsent any evidence that those other projects raised any of the same concerns cited by the [c]ommission to explain its denial of [the plaintiff's] application, [including concerns about traffic safety and community opposition, the plaintiff] cannot carry her burden" of establishing that they were comparators"); *LaTrieste*, 188 F.3d at 70 ("[M]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection."); *Dean*, 527 F. Supp. 3d at 434 (dismissing equal protection claims where Plaintiffs did not provide more than conclusory statements that comparator businesses had the same concerns cited by municipality to explain denial of variances and permits); *Panzella v. City*

*of Newburgh*, 231 F. Supp. 3d 1, 9 (S.D.N.Y. 2017) (concluding that the plaintiffs, operators of a cruise boat business, did not identify similarly situated comparators because, although the comparators both had boats and operated on the same river, the plaintiffs did not allege that the defendant treated those comparators differently under similar circumstances) (citation and internal quotation marks omitted) (collecting cases); *Gregory v. Inc. Vill. of Centre Island*, No. 14-CV-2889, 2016 WL 4033171, at *7 (E.D.N.Y. July 27, 2016) (granting motion to dismiss where plaintiff "failed to plead the existence of a comparator, and thus . . . failed to plead a class-of-one claim").

Likewise, Plaintiffs have failed to allege any facts that indicate how any tax assessments were applied to Gambino's properties — located at 6 St. Mary's Place and the Property — differently than any other similarly situated property owners in the Village.  Plaintiffs allege that properties purchased by Freeport Development Group benefited from a nearly 70% property tax reduction, (Compl. ¶ 23), and Gambino's properties suffered from a 60% tax increase, (Compl. ¶¶ 31–34), but do not offer additional allegations showing the similarities between the properties purchased by Freeport Development Group and Gambino's properties relevant to the tax assessment. *See Missere v. Gross*, 826 F. Supp. 2d 542, 564 (S.D.N.Y. 2011) (finding that the plaintiff did not show a similarly situated business because while the plaintiff sought approval to construct a patio for outside dining, the other business did not seek anything similar and the plaintiff "cannot make out an [e]qual [p]rotection claim, either on a selective enforcement or class-of-one theory, based *merely* on favorable treatment of another, because that does not establish that he also suffered any differential treatment" (emphasis in original)) (collecting cases).

26

Moreover, Plaintiffs also fail to state a claim under the class-of-one theory because the tenant's statement to the Freeport Police Department about the conditions existing at the Property, (Compl. ¶ 38), and subsequent building inspection authorized by court order, (*id.* ¶ 41–42), provide a rational basis for the summonses issued for dangerous conditions, electrical deficiencies, and violations of certificates of occupancy, (*id.* ¶ 43). *See Marom v. Town of Greenburgh*, No. 18-CV-7637, 2020 WL 4891339, at *8 (S.D.N.Y. Aug. 19, 2020) (finding that the plaintiff's attempt to cure code violations supported the notion that the town was motivated by legitimate interests).

Accordingly, the Court dismisses Plaintiffs' equal protection claims against the Village.[10]

**d.   Leave to amend the Complaint**

The Court grants Plaintiffs thirty days from the date of this Memorandum and Order to file an amended complaint.

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (citation omitted) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, 841 F. App'x 249, 253 (2d Cir. 2020) (noting that leave to amend should be freely given). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure

---

[10]   Because Plaintiffs malicious prosecution, unlawful search, due process, and equal protection claims fail, the Court declines to analyze the Village's theory of *respondeat superior* and qualified immunity.

prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Jang v. Trs. of St. Johnsbury Acad.*, 771 F. App'x 86, 88 (2d Cir. 2019) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("[An] [a]mendment is futile if it fails 'to cure prior deficiencies.'" (quoting *Panther Partners Inc.*, 681 F.3d at 119)).  "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."  *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).  "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'"  *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

The Court cannot determine that any amendment would be futile and therefore grants Plaintiffs leave to file an amended complaint.  *See Woo Hee Cho v. Oquendo*, No. 16-CV-4811, 2018 WL 9945701, at *12 (E.D.N.Y. Aug. 25, 2018) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999))); *Caren v. Collins*, 696 F. App'x 19, 22 (2d Cir. 2017) ("[D]ismissals for insufficient pleadings are ordinarily with leave to replead." (internal quotation marks omitted)); *see also Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020) (*sua sponte* granting leave to file a second amended complaint where plaintiff could provide missing facts necessary to support its claims).  Plaintiffs shall file an amended complaint, if any, within thirty days of the date of this Memorandum and Order.  Any amended complaint will completely replace the Complaint and must stand on its own without reference to the Complaint and must

contain all of the claims Plaintiffs seek to pursue.  The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order.[11]  If Plaintiffs elect not to file an amended complaint or fail to file an amended complaint within thirty days of this Memorandum and Order, the Court will dismiss all claims against the Village with prejudice.

### III.  Conclusion

For the reasons stated above, the Court denies Defendant Davella's motions to dismiss and for sanctions, denies Plaintiffs' motion for sanctions against Davella, and grants the Village's motion to dismiss and dismisses without prejudice the Complaint as against the Village.  The Court grants Plaintiffs leave to amend the Complaint within thirty days of the date this Memorandum and Order.

Dated: January 14, 2021
　　　 Brooklyn, New York

　　　　　　　　　　　　　　　SO ORDERED:


　　　　　　　　　　　　　　　_____ s/ MKB _____
　　　　　　　　　　　　　　　MARGO K. BRODIE
　　　　　　　　　　　　　　　United States District Judge

---

[11]  Because the Court denies Davella's motion to dismiss, Plaintiffs' claims against Davella may proceed.